UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| KIRK ASA FREGIA, | ) | |
| Institutional ID No. 1475072, | ) | |
| SID No. 3961129, | ) | |
| Previous TDCJ No. 900120, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:11-CV-00060-BG |
| STEVEN R. SWIFT, Senior Warden, | ) | ECF |
| Individual and Official Capacities, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.  Procedural Background

Plaintiff Kirk Asa Fregia filed this action alleging that Defendants Steven R. Swift, Don A. Jenkins, and the Texas Department of Criminal Justice (TDCJ), violated his constitutional and statutory rights during his confinement at the Price Daniel Unit (Daniel Unit).  Swift and Jenkins are TDCJ employees.  Fregia alleges that he underwent back surgery on May 6, 2010, and returned to Daniel Unit from surgery on May 27, 2010.  He claims that on the day he returned to Daniel Unit Jenkins forced him to carry items weighing more than fifty pounds even though Jenkins knew that Fregia was medically restricted from carrying more than ten pounds due to the surgery.  According to Fregia, Jenkins stated that he was acting pursuant to a policy established by Swift that required all offenders, regardless of restrictions, to carry their own property without assistance or use of a cart.  Fregia claims that enforcement of this policy on May 27, 2010, caused him severe back and

1

leg pain and constituted deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights and 42 U.S.C. § 1983. He also claims that the policy violated his rights under the Americans with Disabilities Act (ADA). He further claims that TDCJ denied him medication and treatment for his pain in violation of his Eighth Amendment rights and 42 U.S.C. § 1983.

The United States District Court transferred the case to the United States Magistrate Judge for further proceedings. The undersigned held an evidentiary hearing on May 12, 2011, pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). After reviewing Fregia's complaint, his testimony under oath, and authenticated records from TDCJ, the undersigned found that Fregia stated a claim sufficient to require an answer or other responsive pleading by Defendants. On May 23, 2011, the court ordered service of process as to Defendants.

Defendants filed an Answer and Jury Demand on June 24, 2011. In their Answer, Defendants denied Plaintiff's allegations and raised affirmative defenses of immunity and failure to exhaust administrative remedies. Defendants also filed a "Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915" on June 22, 2011 (Motion for Partial Dismissal). In that motion, Defendants request (1) dismissal of the ADA claim against Swift and Jenkins in their individual capacities and (2) dismissal of the claims brought pursuant to 42 U.S.C. § 1983 against all Defendants in their official capacities.

The undersigned provided the parties with an opportunity to consent to the jurisdiction of the United States Magistrate Judge. Fregia consented to the jurisdiction of the United States Magistrate Judge in writing on April 14, 2011, but Defendants did not consent. Pursuant to the order of assignment, the undersigned now files this Report and Recommendation.

## II.  Standard of Review

28 U.S.C. § 1915(e)(2) requires a court to dismiss "at any time" a complaint filed *in forma pauperis* if the court determines that the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2) (2011).   A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed.2d 338 (1989). A complaint lacks an arguable basis in law if it is "based on an indisputably meritless legal theory[.]" *Id.* at 327.  A complaint lacks an arguable basis in fact if the "factual contentions are clearly baseless." *Id.*  A court may base a finding of frivolousness on a plaintiff's allegations, testimony obtained at a *Spears* hearing, and authenticated prison records.  *See Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995); *Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991).  The filing of an answer by Defendants does not foreclose a court's ability to dismiss a claim as frivolous pursuant to 28 U.S.C. § 1915.  *See Davis v. Scott*, 157 F.3d 1003, 1004–05 (5th Cir. 1998) (affirming dismissal of inmate's Eighth Amendment claim as frivolous after one of the defendants filed an answer).

Under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915, a complaint fails to state a claim on which relief may be granted if "taking the plaintiff's allegations as true, it appears that no relief could be granted based on the plaintiff's alleged facts." *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir.1999)).

### III.  Eighth Amendment Claims

A.  Claims Regarding Medical Treatment

The Eighth Amendment's prohibition against cruel and unusual punishment protects inmates against a prison official's deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  Under this standard, a prison official is not liable unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

"Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."  *Banuelos*, 41 F.3d at 235.  Furthermore, "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).  For example in *Norton*, the plaintiff complained that the medical treatment he received for a chronic condition was inadequate.  *Id.* at 288.  However, medical records indicated that the plaintiff "was afforded extensive medical care by prison officials, who treated him at least once a month for several years, prescribed medicine, gave him medical supplies, and changed his work status to reflect the seriousness of his problem." *Id.* at 292.  The Court of Appeals for the Fifth Circuit held that the plaintiff failed to state a valid Eighth Amendment claim for deliberate indifference.  *Id.*

In the instant case, Fregia claims that the medical care he received at Daniel Unit for his back and leg pain following the incident on May 27, 2010, was constitutionally insufficient.  Specifically,

4

he claims that the pain medication he received did not provide relief and that insufficient medical testing was done to learn why his pain persisted.

Fregia testified and authenticated records reflect that a nurse examined him for his pain on May 28, 2010, ordered medication, and extended a pass allowing Fregia to use a cane. Fregia also testified that he saw a doctor several times and received prescription pain medication until November 2010, when administrators discontinued the medication because Fregia did not meet certain criteria. He further testified that he continued to receive ibuprofen for his pain but stated that it did not help. Authenticated medical records indicate that Fregia was examined at least eleven times by medical professionals for his problems and regularly received ibuprofen or prescription pain medication from May 28, 2010, until he was transferred out of Daniel Unit in early November 2010. The records also indicate that Fregia's medical restrictions and cane pass were extended as needed. They further reflect that x-rays of Fregia's lumbar spine taken on October 11, 2010, revealed normal alignment and no fracture.

In short, Fregia's sworn testimony and authenticated records indicate that he was afforded extensive medical care by Daniel Unit personnel, who examined him more than once a month, prescribed medication, gave him medical supplies, and changed his medical restrictions to reflect the seriousness of his problems. Thus, Fregia's claims regarding medical treatment constitute a disagreement with medical care received and therefore do not state Eighth Amendment violations. *See Norton*, 122 F.3d at 292. With regard to Fregia's claim of insufficient medical testing, a "medical decision not to order an X-ray, or like [diagnostic] measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. For the foregoing reasons, Fregia's claims regarding medical treatment do not state constitutional violations and should be dismissed pursuant to

28 U.S.C. § 1915.

### B.  Claim Regarding Violation of Medical Restriction

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment deliberate indifference standard.  *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002).  As with claims regarding medical treatment, a prison official is liable under this standard only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference."  *Id.* (quoting *Farmer*, 511 U.S. at 837).  Applying this standard in *Calhoun*, the Fifth Circuit Court of Appeals held that an inmate stated an Eighth Amendment violation where he alleged that (1) he had a medical condition and was medically restricted to four hours of maximum work time, (2) a prison official "knew of this limit and his medical condition but made him work in excess of these time limits[,]" and (3) the extra work "ultimately led to his elevated blood pressure."  *Id.*

In the instant case, Fregia claims that Jenkins forced him to carry items weighing up to fifty pounds even though he informed Jenkins that he was restricted to lifting no more than ten pounds at a time due to a recent back surgery.  At the *Spears* hearing, Fregia testified that Jenkins forced him to carry the items by stating that Fregia would not be able to keep his personal property if he did not carry it.  Fregia further testified that one of the items he carried was a mattress weighing approximately thirty pounds and that he would not have had a mattress on which to sleep if he had not followed Jenkins's orders.  He also testified that he made three trips to carry the items from "line control" to his cell and that the distance between line control and his cell was approximately 400 yards.

6

According to authenticated medical records, Fregia's surgeon found on July 14, 2010, that as a result of carrying his property Fregia "managed to set off a fairly significant focal spasm in the side of his incision where he has likely detached one of his paraspinal muscles from where his surgery was done." The surgeon continued, "He has a large and palpable spasm there that is pretty tender and has increased the amount of spasm in his hip and the amount of sciatica he had." Authenticated records also indicate that Fregia had back surgery on May 6, 2010, and was subject to a ten-pound lifting restriction on May 27, 2010.

In view of the foregoing, Fregia has raised allegations similar to those in *Calhoun*. Specifically, he has alleged that (1) he had a medical condition and a resulting medical restriction, (2) Jenkins knew of Fregia's medical condition and restriction but made him carry his belongings in violation of the restriction, and (3) the incident ultimately led Fregia to injure his leg and back. Accordingly, Fregia has stated an Eighth Amendment violation as to Jenkins. *See Calhoun*, 312 F.3d at 734.

Fregia claims that Jenkins, a lieutenant, was enforcing a policy established by Swift, the senior warden of Daniel Unit. He claims that the policy required all offenders, regardless of restrictions, to carry their own property without assistance or use of a cart. Fregia does not allege that Swift personally denied him a cart on May 27, 2010, or was otherwise directly involved in the incident.

A supervisor can be held liable for a constitutional deprivation "without overt personal participation in the offensive act" if he implements a policy "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation[.]" *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d

7

161, 169, 170 (5th Cir.1985)) (internal quotations omitted).  The "existence of a constitutionally deficient policy cannot be inferred from a single wrongful act."  *Id.*  In the instant case, Fregia has alleged more than a single wrongful act: he testified that Jenkins explicitly stated that he was implementing a new policy that was established by Swift while Fregia was away for surgery.  Fregia further testified that a former assistant warden of Daniel Unit had no problem with medically restricted inmates using carts to transport property.  According to authenticated prison records, a TDCJ official responded to a grievance Fregia submitted regarding the policy as follows: "Unit Administration was made aware of your allegations regarding the utilization of laundry carts.  This issue was addressed by [a captain] and proper measures are in process to help alleviate this sort of action from occurring again."

Fregia has not stated a constitutional violation as to TDCJ because he has not alleged and authenticated prison records do not indicate that TDCJ established the policy in question.  However, Fregia has sufficiently alleged that Swift created a policy that was the "moving force" of an alleged Eighth Amendment violation.  Furthermore, in view of *Calhoun,* the alleged policy is so deficient that it constitutes a repudiation of Eighth Amendment rights to the extent that it forces inmates to injure themselves by violating their medical restrictions.  Accordingly, Fregia has stated a constitutional violation as to Swift.

## IV.  ADA Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2011).  This provision applies to state prisons and prisoners.  *Pennsylvania*

*Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998) ("[T]he statute's language unmistakably includes State prisons and prisoners within its coverage.").

To establish an ADA violation, a plaintiff must demonstrate three things. First, he must demonstrate that he is a qualified individual within the meaning of the ADA. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671 (5th Cir. 2004). Second, he must demonstrate that he is being excluded from participation in or being denied benefits of services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity. *Id.* Third, he must demonstrate that the exclusion, denial of benefits, or discrimination is "by reason of his disability." *Id.* at 671–72.

### A.  Qualified Individual

A plaintiff is a qualified individual within the meaning of the ADA if he has a disability and meets the "essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity" with or without "reasonable modifications to rules, policies, or practices[.]" 42 U.S.C. § 12131(2). Accordingly, to state a valid ADA claim, Fregia must allege that (1) he has a disability and (2) he meets essential eligibility requirements for the activity of which he is allegedly being deprived. *Id.*

A plaintiff has a disability if he has "a physical or mental impairment that substantially limits one or more [of his] major life activities[.]" *Id.* § 12102(2)(A). Specifically, a plaintiff must show that his "important life activities are restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people." 28 C.F.R. Pt. 35, App. B § 35.104 (2011). Walking is a major life activity. *Id.*

Fregia has alleged that the physical impairment in his back caused him to walk with a cane

at the time of the alleged ADA violation.  He has further alleged and authenticated records indicate that he was unable to walk more than 2,400 yards without injury or significant pain.  Accordingly, he has sufficiently alleged that his physical impairment substantially limited him in the major life activity of walking in that the impairment restricted him as to the conditions, manner, and duration in which he could walk at the time of the alleged ADA violation.  Therefore, Fregia has sufficiently alleged that he had a disability as defined by the ADA.  In addition, Freiga has alleged that he was allowed to keep his property after carrying it, indicating that he met the essential eligibility requirements for possessing personal property while incarcerated in a TDCJ facility.

For the foregoing reasons, Fregia has sufficiently alleged that he was a qualified individual with a disability at the time of the alleged ADA violation.

<u>B.  Discrimination by Reason of Disability</u>

Pursuant to the regulations governing ADA claims, "A public entity, in providing any aid, benefit, or service, may not . . . limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service" on the basis of disability.  28 C.F.R. § 35.130(b)(1)(vii).  In addition, a public entity "shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability . . . from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."  *Id.* § 35.130(b)(8).  Furthermore, a public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability[.]"  *Id.* § 35.130(b)(7).  The regulations indicate that these provisions are specific applications of the ADA's "general prohibitions of discrimination."  28 C.F.R. Pt. 35, App. B §

35.130.

As previously discussed, Fregia has alleged that Swift established and Jenkins implemented a policy that required all inmates to carry their own property without assistance or use of a cart.  He asserts that implementation of this policy limited him in the enjoyment of the privilege of possessing personal property in prison on the basis of his disability.  *See id.* § 35.130(b)(1)(vii).  He has also alleged facts that indicate that the policy imposed a requirement that screened him out of enjoying fully and equally the activity of possessing personal property in prison.  *See id.* § 35.130(b)(8).  In addition, he has alleged facts that indicate that the policy constitutes failure to make a reasonable policy modification that was "necessary to avoid discrimination on the basis of disability[.]"  *See id.* § 35.130(b)(7).  According to Fregia, a prior assistant warden had no problem with inmates with medical restrictions using carts and that the policy in question was later changed to allow inmates with medical restriction to use carts to transport property.  These allegations point to the reasonableness of Fregia's proposed accommodation.  Finally, Fregia has alleged that the discrimination was by reason of his disability.

For the foregoing reasons, Fregia's ADA claim withstands screening under 28 U.S.C. § 1915.

## V.  Exhaustion of Administrative Remedies

An inmate may not bring a claim under 42 U.S.C. § 1983 "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (2011).  TDCJ has a two-step inmate grievance process.  *See* Tex. Dep't of Crim. Justice, <u>Offender Orientation Handbook</u> 52–54 (2004), *available at* http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf.  An inmate "must pursue a grievance through both steps for it to be considered exhausted."  *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).  However, "prison officials' statements concerning

administrative remedies can render such remedies unavailable." *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

To exhaust administrative remedies for a particular claim, a grievance must give prison officials "fair opportunity under the circumstances to address the problem that will later form the basis of the suit[.]" *Johnson*, 385 F.3d at 522. However, an inmate need not present legal theories or identify defendants by name as long as the grievances can fairly be read to alert prison officials to the conduct that forms the basis of the inmate's claims. *See id.* at 517–23.

"Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon*, 596 F.3d at 272. "[W]hen courts rule on exhaustion on the basis of evidence beyond the pleadings, the nonmoving party should be granted the protections of Rule 56 [governing summary judgment]." *Id.* at 271. Defendants who raise the affirmative defense of failure to exhaust administrative remedies "must establish beyond peradventure all of the essential elements of the defense . . . to warrant summary judgment in their favor." *Id.* at 266. "If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary." *Id.* at 273 (footnote omitted).

In the instant case, Defendants assert in their Answer that Fregia has not exhausted his administrative remedies. Fregia attached to his complaint and authenticated records contain copies of Step 1 and Step 2 grievances that describe the incident on May 27, 2010, when he was denied the use of a cart to transport his property. Authenticated records provided by TDCJ also include copies of Step 1 and Step 2 grievances in which Fregia complained about medical treatment for his back

12

and leg pain.  These grievances were pursued through both steps of the TDCJ's grievance process and can fairly be read to alert prison officials to the conduct that forms the basis of Fregia's claims. Accordingly, Defendants' assertion of failure to exhaust administrative remedies does not provide a basis for dismissal.

## VI.  Qualified Immunity

In their Answer, Swift and Jenkins assert qualified immunity as to all of Fregia's claims against them in their individual capacities.  "Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009).  After a defendant raises qualified immunity, "[t]he plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor."  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal citation omitted).

### A.  Eighth Amendment Claims

A plaintiff must overcome two hurdles to defeat a qualified immunity defense with respect to constitutional claims.  First, a plaintiff must allege facts that amount to a violation of a constitutional right. *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).  Second, the constitutional right must be clearly established at the time of a defendant's alleged misconduct.  *Id.* A constitutional right is clearly established if the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Brown v. Callahan*, 623 F.3d at 253.  A plaintiff meets this standard if the unlawfulness of the officers' conduct is "readily apparent from relevant precedent in sufficiently similar situations."  *Brown v. Miller*, 519 F.3d 231, 236–37 (5th Cir. 2008) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 257

13

(5th Cir. 2005)).  "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper."  *Brown v. Callahan*, 623 F.3d at 253.  The objective reasonableness of an officer's conduct "must be measured with reference to the law as it existed at the time of the conduct in question."  *Valencia v. Wiggins*, 981 F.2d 1440, 1448 (5th Cir. 1993).

In the instant case, Fregia has alleged that Jenkins forced him to violate his medical restrictions pursuant to a policy established by Swift, resulting in injury to Fregia's leg and back. As previously described, these facts, if true, amount to an Eighth Amendment violation. Furthermore, the unlawfulness of implementing a policy that forces inmates to injure themselves by violating their medical restrictions is readily apparent from *Calhoun* and other relevant precedent. *See Calhoun*, 312 F.3d at 734; *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989) ("If prison officials knowingly put [an inmate] on a work detail which they knew would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs.").  Thus, Fregia has alleged facts that, if true, demonstrate that no reasonable officer could have believed the conduct was proper in view of the law as it existed at the time.

Defendants deny Fregia's account of the incident on May 27, 2010.  Because there are disputed issues of material fact relevant to Defendants' qualified immunity defense, the case should proceed forward at this stage.  *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435–36 (5th Cir. 1993) ("Whether [the defendants] had an objectively reasonable basis [for their conduct] cannot be sorted out without settling on a coherent view of what happened in the first place.").

14

### B.  ADA Claim

As to ADA claims, courts "apply a two pronged test to ascertain the viability of a defendant's assertion of qualified immunity."  *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999).  First, a court must determine whether the plaintiff has pleaded an ADA violation.  *Id.*  If the plaintiff has done so, a court must then decide "whether the defendants' conduct was objectively reasonable in light of 'clearly established' law at the time of the alleged violation." *Id.* (quoting *Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991)).

As previously described, Fregia has pleaded an ADA violation.  Furthermore, it was clearly established at the time of the alleged violation that the ADA applies to state prisons.  *Yeskey*, 524 U.S. at 209.  Thus, Swift and Jenkins should reasonably have known that their actions might incur liability under the ADA.  Accordingly, qualified immunity does not provide a basis for dismissal of Fregia's ADA claim at this stage.  *Compare Hall*, 190 F.3d at 697 (holding that county law enforcement officials were entitled to qualified immunity for ADA claims because the alleged violations occurred before *Yeskey* was decided and therefore defendants "could not reasonably have known that their actions might incur liability under the ADA").

### VII.  Defendants' Motion for Partial Dismissal

In their Motion for Partial Dismissal, Defendants argue that (1) Fregia has not stated a valid ADA claim against Swift and Jenkins in their individual capacities and (2) the Eleventh Amendment grants all Defendants immunity from Fregia's claims brought pursuant to 42 U.S.C. § 1983.  Having considered the applicable law and the arguments of the parties, the undersigned is of the opinion that Defendants' motion should be **GRANTED**.

A.  ADA Claim Against Swift and Jenkins in Their Individual Capacities

Title II of the ADA "provides disabled individuals redress for discrimination by a 'public entity.'" *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (quoting 42 U.S.C. § 12132).  "That term, as it is defined within the statute, does not include individuals."  *Id.*  Thus, "a government official cannot be sued in his or her individual capacity for a violation of the ADA." *Gonzales v. City of Corpus Christi*, No. C.A. C-05-280, 2005 WL 3058168, at *7 (S.D. Tex. Nov. 9, 2005); *see also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for individual capacity suits against state officials); *Nottingham v. Richardson*, No. 2:10-CV-0060, 2011 WL 4498865, at *16 (N.D. Tex. Sept. 13, 2011) (holding that inmate could not sue county officials in their individual capacities under the ADA).  Accordingly, Fregia's ADA claim against Swift and Jenkins in their individual capacities should be dismissed.

B. Claims Brought Pursuant to 42 U.S.C. § 1983 Against Defendants in Their Official Capacities

The Eleventh Amendment prohibits suits "brought against a state by one of its own citizens, as well as [suits] brought by a citizen of another state."  *Ex parte Young*, 209 U.S. 123, 150, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  This prohibition "also protects state actors in their official capacities."  *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010).  However, the Eleventh Amendment "does not protect state officials from claims for prospective relief when it is alleged that the state officials acted in violation of federal law."  *Warncock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).  To fall under this exception, "a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect."  *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir.

16

1992).  As a non-individual and instrumentality of the state, TDCJ enjoys Eleventh Amendment immunity from suits brought pursuant to 42 U.S.C. § 1983 regardless of the type of relief sought. *See Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (holding that Eleventh Amendment barred suit brought pursuant to 42 U.S.C. § 1983 against TDCJ for injunctive relief).

In their Motion for Partial Dismissal, Defendants argue that the Eleventh Amendment grants them immunity from suit in their official capacities for Fregia's claims brought pursuant to 42 U.S.C. § 1983.  This argument has merit.  Fregia has sought only monetary damages from Swift and Jenkins, and "the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacit[ies]." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).  Although Fregia seeks monetary and injunctive relief from TDCJ, that entity enjoys Eleventh Amendment immunity for claims brought pursuant to 42 U.S.C. § 1983 regardless of the type of relief sought. *See Aguilar*, 160 F.3d at 1054.  Accordingly, Fregia's claims brought pursuant to 42 U.S.C. § 1983 against Swift and Jenkins in their official capacities and against TDCJ should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e).

## VIII.  Recommendation

For the foregoing reasons, the undersigned recommends that the District Court proceed as follows:

1. **DISMISS** Fregia's 42 U.S.C. § 1983 claims regarding medical treatment;

2. **GRANT** Defendants' Motion for Partial Dismissal;

3. **DISMISS** Fregia's ADA claim against Swift and Jenkins in their individual capacities;

4.      **DISMISS** Fregia's 42 U.S.C. § 1983 claims against Swift and Jenkins in their official capacities;

5.      **DISMISS** Fregia's 42 U.S.C. § 1983 claims against TDCJ; and

6.      Enter a scheduling order as to Fregia's remaining claims, which are described below:

      A.      ADA claim against TDCJ and against Swift and Jenkins in their official capacities only

      B.      Claim brought pursuant to 42 U.S.C. § 1983 against Swift and Jenkins in their individual capacities insofar as Fregia has alleged that Jenkins forced him to carry items in violation of his medical restrictions pursuant to the policy established by Swift in violation of his Eighth Amendment rights.

## IX.  Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

18

DATED:        December 30, 2011.

NANCY M. KOENIG
United States Magistrate Judge